UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                                    Chapter 11

      Lenox 126 Realty LLC                        Case no.  11-12275

                    Debtor.
--------------------------------------------------------x

## <u>NOTICE OF HEARING</u>

        PLEASE TAKE NOTICE, a hearing will be held on August 10, 2011 at 10:00

a.m. (the "Hearing") before the Honorable Sean H. Lane, at the United States Bankruptcy Court,

One Bowling Green, New York, New York 10004 to consider interim approval of the annexed

cash collateral stipulation ("Stipulation") pursuant to section 363 of the Bankruptcy Code.

        PLEASE TAKE FURTHER NOTICE, that a final hearing on the Stipulation will

be scheduled at the August 10, 2011 hearing.

Dated: New York, New York
       August 1, 2011

                            BACKENROTH FRANKEL & KRINSKY,
                            LLP

               By:    <u>s/ Mark Frankel</u>
                            489 Fifth Avenue
                            New York, New York  10017
                            (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

In re:

                                    Case No. 11-12275-SHL

LENOX 126 REALTY LLC

                                    Chapter 11

                Debtor.

----------------------------------X

## FINAL STIPULATION AND CONSENT ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL, PROVIDE ADEQUATE PROTECTION AND RELATED RELIEF

Lenox 126 Realty LLC, the debtor and debtor-in-possession (the "Debtor"), and Griffon Heights LLC ("Griffon"), have consented to the terms of this final stipulation and consent order (the "Stipulation"): (i) authorizing the Debtor to use the cash collateral of Griffon; (ii) determining adequate protection in connection therewith; and (iii) providing related relief; and upon all the proceedings heretofore had herein; and after due deliberation and good and sufficient cause appearing therefore,

Recitals:

A.    On May 12, 2011 (the "Filing Date"), the Debtor filed for protection under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), whereupon the Debtor was authorized to continue in the operation and control of its business and property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.    The Debtor executed a Consolidated Mortgage Note (the "Note") on or about January 13, 2006 in favor of Chinatrust

Bank (U.S.A.) ("Chinatrust") in the original principal amount of $7,500,000.00. As collateral for the Note, the Debtor executed a Consolidated Mortgage on or about January 13, 2006 (the "Mortgage") which is a first lien on premises known as 321 Lenox Avenue, New York, New York (the "Premises"). Pursuant to the Mortgage, the Debtor granted the Chinatrust a first lien security interest in all rents, income, profits royalties and proceeds derived from the Premises (the "Collateral"). The Mortgage was recorded on March 23, 2006 in the Office of the City Register of the City of New York, County of New York in CRFN 2006000164367. The income generated by the Collateral is cash Collateral ("Cash Collateral") within the meaning of the Bankruptcy Code. The Note and Mortgage have subsequently been transferred and assigned to Griffon.

C. As of May 12, 2011, the total unpaid indebtedness under the Note was $11,826,048.64.

D. The Debtor expects to expend cash, including Griffon's Cash Collateral, for payment of current and future taxes, utilities, insurance, obligations owed to Griffon and other charges.

E. Consideration of this Stipulation constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (K),

(M), and (O).

F. This Court has jurisdiction over this proceeding, the parties and property affected hereby pursuant to 28 U.S.C. §§157 and 1334.

G. No committee has been appointed to date in this case.

H. The Debtor asserts that "good cause" has been shown for the entry of this Stipulation. Among other reasons, approval of this Stipulation, which seeks to permit use of Cash Collateral will (i) minimize disruption of the Debtor's business and operations, (ii) permit the Debtor to meet its obligations and expenses, and (iii) be in the best interests of the Debtor, its creditors and other parties-in-interest towards maintaining going concern value for purposes of a reorganization.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** between the Debtor and Griffon:

1. The foregoing recitals are incorporated by reference, and are true and correct and binding on the Debtor.

2. Griffon consents to the Debtor's use of Cash Collateral according to the terms of this Stipulation, on the following terms and conditions:

a. The Cash Collateral is, and for all purposes herein, will be deemed to constitute cash collateral in which Griffon

has an interest under 11 U.S.C. § 363(a) and (c)(2).

b. Debtor may use Cash Collateral of Griffon to pay for Debtor's ordinary and necessary post-petition operating expenses as categorized in the proposed monthly budget attached hereto as Exhibit "A". Ordinary and necessary post-petition expenses shall be defined as those items set forth in the monthly budget attached hereto as Exhibit "A" and shall be amounts which do not exceed the amount specified therein for each category of expenses by more than five percent (5.0%). The Debtor shall obtain Griffon's written permission before making or incurring any obligation or making or incurring any expenditures from the Cash Collateral Accounts, as hereinafter defined, in excess of five percent (5.0%). If the Debtor and Griffon cannot reach an agreement with respect to whether the Debtor shall be allowed to use Cash Collateral of Griffon for expenses not included in the categories included in the proposed monthly budget, the Debtor may submit the matter to the Court by motion for determination of the issue, and if Griffon fails to respond to a written request within seven (7) days after such written request is received by Griffon and Griffon's counsel, or Griffon denies a written request within seven (7) days after such written request is received by Griffon and the Griffon's counsel, or if emergency circumstances necessitate an earlier response.

Griffon's Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate, except as expressly set forth in this Stipulation and the monthly budget attached hereto as Exhibit "A".

c. No Cash Collateral shall be used in payment of any kind whatsoever to Debtor's officers, directors, shareholders, employees (except as provided in the annexed budget), relatives or any representatives or affiliates thereof, or any insiders as that term is defined by 11 U.S.C. § 101(31).

d. Notwithstanding the above, the Debtor may use Cash Collateral on an emergency basis, in an amount not to exceed, in any one month, the sum of $1,000.00 per month; provided, however, that the Debtor shall notify the Griffon within 24 hours after any such expenditures are made. The Debtor shall also promptly provide the Griffon with copies of invoices paid with respect to such emergency expenditures; provided, however, that in no event will any funds whatsoever be paid under this section to any persons or entities who are insiders of the Debtor as that term is defined by 11 U.S.C. §101(31).

e. The Debtor shall maintain property, casualty, and liability insurance coverage as provided in the mortgage in connection with the Collateral. Debtor shall promptly furnish Griffon with proof of such insurance. In the event that the

insurance coverage for the Collateral is allowed to lapse for any reason, Debtor agrees that Griffon may, notwithstanding any applicable provision of Title 11, United States Bankruptcy Code, force-place insurance coverage. The Debtor further agrees that in the event that Griffon is required to obtain force-placed insurance coverage, Griffon may provide the Debtor with a demand to reimburse Griffon for such coverage, and if, seven (7) days following the receipt of such notice, the Debtor has not reimbursed Griffon for such insurance coverage, Griffon may seek relief, on five (5) days notice from the Bankruptcy Court, from the automatic stay of 11 U.S.C. § 362(a) to commence and complete foreclosure of the Collateral.

f. The Debtor shall remain current on all post-petition tax obligations, as set forth in the monthly budget attached as Exhibit "A" hereto, arising out of its ownership and/or operation of its business. Debtor agrees that evidence of payment of all post-petition tax obligations shall be tendered immediately to Lender upon the payment thereof. In the event that Debtor fails to make any required post-petition tax payment, Griffon may advance such funds and seek immediate reimbursement from Debtor notwithstanding any applicable provision of Title 11 of the United States Bankruptcy Code. In the event that Griffon advances such tax payments and Debtor

does not reimburse Griffon within seven (7) days of having received notice thereof, Griffon may proceed on seven (7) days notice for relief from the automatic stay of 11 U.S.C. § 362(a), to commence and complete a seizure of the Collateral.

g. Within seven (7) days of entry of this Order, Debtor shall remit to Griffon all Cash Collateral in its possession, less $20,000. Thereafter, beginning on August 10, 2011, and continuing thereafter, on, or on the first business day following, the tenth (10) calendar day of each month, Debtor shall remit to Griffon the cash flow remaining from the Debtor's income less its expenses for such preceding month, both on a cash basis, along with evidence, in form and substance satisfactory to Griffon, of the Debtor's income and expenses, both on a cash basis, for such preceding month. All remissions of funds hereunder shall be applied by Griffon in the manner provided for in the Note, subject, however, to reallocation, and possible disgorgement, to the extent required by 11 U.S.C. § 506(a) and (b). The Debtor shall maintain all remaining Cash Collateral in its D.I.P. account as required by the Bankruptcy Code, and by the Office of the United States Trustee for the Southern District of New York.

3. The Debtor is prohibited from commingling the Cash Collateral with monies from any other sources. Cash

Collateral is to remain in the Cash Collateral Accounts until expended under the terms of the Stipulation or further Court order.

5. Disbursements to Griffon under paragraph 2(g) hereof shall be accomplished by delivery of a check drawn on one of the Cash Collateral Account delivered to Griffon or by wire transfer on Griffon's instruction.

6. Debtor shall timely file monthly operating reports with the office of the United States Trustee. Debtor shall also provide Griffon on or before the fifteenth day of each month with copies of all financial information and reports, prepared on or after the Filing Date, that the Debtor files with the Court and the Office of the United States Trustee, prepared for internal review or audit, or delivered to any third parties whatsoever, including, but not limited to, monthly operating reports, interim statements, operating reports, bankruptcy schedules, financial statements and accountings.

7. Upon reasonable notice, but no less than twenty four (24) hours written notice from Griffon, the Debtor shall provide Griffon with such other financial information as it may request, including but not limited to providing access for Griffon and the Griffon's auditors to the Debtor's books and records, including but not limited to, all financial records

relating to the operation or condition of the Premises, whether that information is maintained in the hands of the Debtor, affiliates of the Debtor, or the accountants, attorneys, or agents of any of them.

8.  Upon reasonable notice, but no less than twenty four (24) hours written notice from Griffon, the Debtor shall make the Premises available to Griffon for one or more physical inspections, at Griffon's sole and absolute discretion, so that Griffon may conduct and complete appraisals and environmental reviews, and analyses of any sort with respect to the current condition or prospective use of the Premises.

9.  The Debtor, for itself but not on behalf of its estate, acknowledges and agrees that as of the Filing Date: (a) the Note is a valid, binding and non-avoidable agreement and constitutes an outstanding obligation of the Debtor; (b) the indebtedness due and payable Griffon as of the Filing Date, is approximately $11,826,048.64, plus all applicable interest, costs, fees and expenses provided for in the Note (the "Griffon Claim"); (c) Griffon holds an allowed claim against the Debtor's estate in the full amount of the Griffon Claim. This provision is without prejudice to the rights and remedies of the Official Committee of Unsecured Creditors, and if no such Committee is established, then to any unsecured creditor of the Debtor's

estate.

10. Notwithstanding any provision herein, the Debtor's right to use Griffon's Cash Collateral terminates on October 10, 2011, unless extended by Stipulation or Order. Moreover, nothing in this Stipulation shall constitute any commitment by Griffon to make any additional loans or extend any further credit or other financial accommodations to or for the benefit of the Debtor.

11. Additionally, unless Griffon otherwise agrees in writing, the termination date of this Stipulation ("Termination Date") shall be defined as the earliest of: (a) the date an order is entered by the Court granting a motion to convert the above-captioned case to a case under Chapter 7 of the Code; (b) the date an order is entered by the Court granting Griffon, or any other Creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession or other proceedings against the Premises and/or the Collateral; (c) the date an order is entered by the Court granting a motion to dismiss the above-captioned case; (d) the date an order is entered by the Court granting a motion to appoint a trustee in the above-captioned case; (e) the date on which the order approving the Stipulation is reversed, revoked, modified, amended, stayed, rescinded or supplemented; (f) the date of

confirmation of a plan of reorganization; and (g) October 10, 2011.

12. Griffon and the Debtor agree that Griffon is entitled to additional security to adequately protect Griffon in the event that its Collateral decreases in value during the pendency of this Chapter 11 Case. In order to secure Griffon so as to adequately protect Griffon against any diminution in the value of its Collateral (including Cash Collateral), Griffon is hereby granted a valid, binding, enforceable and perfected continuing replacement first-priority lien and security interest in and on any and all real and personal property, tangible and intangible, equipment, accounts receivable or rents income and profits of the Debtor, including all post-petition contract rights, agreements or the like, and all other assets of the Debtor and the proceeds thereof, of any kind or nature, wherever located, now owned or hereafter acquired, to the same extent, validity and priority held by Griffon on the Filing Date, whether or not constituting pre-petition collateral or post-petition collateral (collectively referred to herein as the "Estate Collateral") senior to all other liens against the Debtor's estate existing as of the Filing Date pursuant to 11 U.S.C. § 363 in the amount of any such diminution in value. Such lien is subject only to: (i) the fees of the United States

Trustee pursuant to 28 U.S.C. § 1930and statutory interest thereon, if any, pursuant to 31 U.S.C. § 3717; (ii) reasonable claims under Section 726(b) of the Bankruptcy Code, with the exception of any claims against the Debtor's estate for the costs and expenses of litigation against Griffon; and (iii) any valid, duly perfected, unavoidable liens existing at the time of the bankruptcy filing having priority over the liens asserted by Griffon under the Note. Notwithstanding the foregoing, the Debtor and Griffon acknowledge that the continuing replacement first-priority lien and security interest described in this provision shall not attach to any avoidance actions or claims or causes of action under sections 11 U.S.C. §§ 544, 545, 547, 548 and 549 (except liens on recoveries under section 549 on account of collateral as to which the lender has a post-petition lien), and the proceeds thereof, or a super-priority administrative claim payable from the proceeds of such claims and causes of action.

13. Griffon's Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate, except as provided in this Order, and the monthly budget attached hereto as Exhibit "A," except that Griffon agrees to a carve-out for Debtor's reasonable

professional fees, to the extent approved by the Bankruptcy Court.

14. The entry of this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or impliedly, or otherwise impair, any of the rights, claims or privileges (whether legal, equitable or otherwise) of Griffon under the Bankruptcy Code or under non-bankruptcy law, including its right to seek relief from the automatic stay under §362 of Title 11 of the United States Bankruptcy Code and to pursue direct claims against any guarantor(s) of the Note, nor shall Griffon need to obtain leave from any Court to do so.

15. Except as otherwise provided herein, the Debtor shall be enjoined and prohibited from, at any time during this Chapter 11 Case, granting security interests or liens in the Estate Collateral (including the Cash Collateral) or any portion thereof, to any other parties pursuant to Section 364(d) of the Bankruptcy Code or otherwise, which security interests or liens are senior to or on a parity with the security interests or liens of Griffon, as the case may be without order of the Court after notice and hearing.

16. The Debtor shall execute and deliver to Griffon all such agreements, financing statements, instruments and other documents as Griffon may reasonably request to evidence,

confirm, validate or perfect its security interests and liens granted pursuant hereto.

17. This Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the property of the estate of the Debtor granted to Griffon as and to the extent set forth herein, without the necessity of filing, recording or serving any financing statements or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Griffon in this Stipulation and the Note. If Griffon shall, in its discretion, elect for any reason to file any such security interests and liens, the Debtor is hereby authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon Griffon's request and the filing, recording or service thereof (as the case may be) of such financing statement or similar documents shall be deemed to have been made at the time of and on the Filing Date. Griffon may, in its discretion, file a copy of this Stipulation in any filing or recording office in any County or other jurisdiction in which the Debtor has real or personal property and, in such event, the subject

filing or recording officer is authorized and directed to file or record such certified copy of this Stipulation.

18. Griffon shall be entitled to the protection of Section 363(a) of the Bankruptcy Code with respect to diminution of Griffon's Collateral in the event that its Collateral decreases in value during the pendency of this Chapter 11 Case, in the event that this Stipulation or any authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

19. The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order dismissing this case or converting the Debtor's chapter 11 case to one under Chapter 7. Nothing in this Stipulation shall, however, impair the provisions of Section 726(b) of the Bankruptcy Code.

20. The Debtor warrants and represents to Griffon that its insurance policies (collectively, the "Policies") are in effect and that it will maintain casualty, liability and all other coverage. Without limiting the responsibilities or duties of the Debtor established by this Stipulation, the Bankruptcy Code, or otherwise, the Debtor shall timely pay all premium amounts for the Policies as they become due.

21. Except as provided herein, the Debtor agrees to continue to comply with all the non-monetary obligations set forth in the Note and the Mortgage. The Debtor agrees further that on or before August 22, 2011 the Debtor shall file a Chapter 11 plan that either: (i) provides for payment in full of all amounts due and owing to Griffon as set forth in this Stipulation, plus accrued interest, as well as a payment of at least a 10% distribution to general unsecured creditors, on or before October 30, 2011; or (ii) provides for a sale of the Premises in the Bankruptcy Court on or before October 30, 2011, subject to a carve out from distributions to Griffon sufficient to pay all administration claims plus a 10% distribution to general unsecured creditors.

22. Failure by the Debtor to fulfill any of the obligations set forth in this Stipulation shall constitute an event of default ("Event of Default"), including, but not limited to, making all payments set forth in paragraph 2(g) herein. Should an Event of Default occur, Griffon may file and serve by mail or by facsimile, if such facsimile number is available, an affidavit (the "Griffon Affidavit"), identifying the Event(s) of Default, upon Debtor's counsel, the Office of the U.S. Trustee and all parties having filed a Notice of Appearance in this case (the "Appearing Parties"). The Debtor

shall have seven (7) days to either cure the Event of Default or the Debtor or any other party provided with notice in accordance to this decretal paragraph may file a counter-affidavit (the "Counter-Affidavit") opposing the allegations raised in the Griffon Affidavit with specificity. If a Counter-Affidavit is filed, then a hearing will be scheduled at the earliest possible convenience of the Court on no less than seven (7) days written notice to the Debtor, Griffon, the Appearing Parties, and the Office of the U.S. Trustee (the "Interested Parties") to determine whether an Event of Default has occurred and whether Griffon is entitled to relief from the automatic stay enabling it to take possession of its Collateral. If, within seven (7) days after the service of the Griffon Affidavit, the Debtor fails to cure the Event of Default or if the Debtor or any of the other Interested Parties fail to serve upon counsel for Griffon a Counter-Affidavit and file the Counter-Affidavit with the Court, then the Griffon shall, after five (5) days notice to the Debtor, file an application with the Court seeking an order terminating the Debtor's right to use Cash Collateral and modifying the automatic stay to enable Griffon to take possession of its Collateral (the "Termination Order"). Nothing contained herein shall be construed to preclude Griffon from filing a motion seeking relief from the automatic stay or from

seeking any other appropriate relief in the Debtors' bankruptcy cases at any other time during this Case.

23. This Stipulation is without prejudice to the rights and remedies of the Office of the United States Trustee and without prejudice to the rights and remedies of the Official Committee of Unsecured Creditors, and if no such Committee is established, then to any unsecured creditor of the Debtor's Estate.

24. The Debtor shall, at its sole expense, seek Bankruptcy Court approval of this Stipulation and Order.

25. Except as otherwise provided in this Stipulation, the terms and conditions of the Note, Mortgage, Assignment of Lease and Rents, and other Loan Documents shall remain in full force and effect, and the Griffon shall have all the rights provided therein, subject to the provisions of the Bankruptcy Code and any Orders of the Bankruptcy Court.

26. The provisions of this Stipulation shall be binding upon the Debtor and its respective successors and assigns, including any trustee hereinafter appointed in the within Chapter 11 case or any subsequent Chapter 7 case.

27. The Debtor, Griffon and all other parties are hereby authorized and directed to execute all documents, notes, instruments, agreements and/or other items necessary to carry

out the purposes of this Stipulation and to take any action necessary or appropriate to perfect liens created in this Stipulation.

28. The Debtor shall provide Griffon with a statement of cash flow, and income and expenses, as may from time to time be reasonably requested by Griffon in sufficient detail to enable Griffon to assess the Debtor.

29. The parties agree that time is of the essence with respect to all terms and conditions of this Stipulation.

30. Any notices required to be given under this Stipulation shall be given by facsimile transmission and Federal Ex overnight delivery as follows:

To the Debtor to:

**126 Lenox LLC**
**1027 Hylan Blvd**
**Staten Island, NY 10305**


With a copy to: **Mark Frankel, Esq.**
**Backenroth Frankel and Krinsky, LLP**
**489 Fifth Avenue**
**New York, New York 10017**


If to Griffon to: **Michael Shah**
**Griffon Heights LLC**
**149 Madison Avenue**
**New York, New York 10016**

With a copy to: **Frank C. Dell'Amore, Esq.**
**Jaspan Schlesinger LLP**
**300 Garden City Plaza**
**Garden City, New York 11530**
**Facsimile No. (516) 392-8282**

31. This Stipulation may be executed in counterparts and by electronic signatures and each such counterpart and signature shall be deemed to be an original, but all such counterparts shall together constitute but one and the same agreement.

32. This Stipulation is subject to a carve out for Debtor's reasonable professional fees upon approval of the Bankruptcy Court, up to $15,000 for Chapter 7 reasonable trustee fees, if applicable, and all fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6).

33. This Stipulation sets forth the entire agreement between the parties with respect to the matters stated herein and supersedes all prior discussions, negotiations and agreements, written or oral, and may not be modified except by a writing signed by the Debtor and Griffon.

34. This Stipulation shall be effective immediately upon approval by the Court.

**DATED: July __, 2011**

> Jaspan Schlesinger LLP
> By: /s/ Frank C. Dell'Amore
>
> Frank C. Dell'Amore, Esq.
> Attorneys for
> Griffon Heights LLC
>
> 300 Garden City Plaza
> Garden City, NY 11530
> (516) 393-8289
>
>
> Backenroth Frankel
> and Krinsky, LLP
>
> By: _____
>
> Mark Frankel, Esq.
> Attorney for Debtor
> 489 Fifth Avenue
> New York, New York 10017

DATED: _____, 2011

SO ORDERED:

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**
**Monthly Budget**

## CASH FLOW PROJECTION FOR THE PERIOD 7/2011 THROUGH _6/2012_____

A cash flow projection must be included for each property. The debtor's cash flow projection may be substituted for this page. Attach additional sheets as needed.
This projection needs to be completed at the beginning of the case, every year, or when there are significant changes (i.e. tenant change, rent change, etc.)

Property: 101 West 126th St NY NY 10027
Square Footage: _____

| | MONTH Jul | MONTH Aug | MONTH Sep | MONTH Oct | MONTH Nov | MONTH Dec | MONTH Jan | MONTH Feb | MONTH Mar | MONTH Apr | MONTH May | MONTH Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | |
| Rental Income | 39,341 | 45,791 | 45,791 | 45,791 | 45,791 | 45,791 | 60,791 | 60,791 | 60,791 | 60,791 | 60,791 | 60,791 |
| Additional Rental Income | | | | | | | | | | | | |
| Common Area Maintenance Reimbursement | | | | | | | | | | | | |
| Total Income | 39,341 | 45,791 | 45,791 | 45,791 | 45,791 | 45,791 | 60,791 | 60,791 | 60,791 | 60,791 | 60,791 | 60,791 |
| **OPERATING EXPENSES** | | | | | | | | | | | | |
| Advertising | | | | | | | | | | | | |
| Auto and Truck Expense | | | | | | | | | | | | |
| Cleaning and Maintenance | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Commissions | 3,000 | 5,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Officer/Insider Compensation* | | | | | | | | | | | | |
| Insurance | 1,224 | 1,224 | 1,224 | 1,224 | 1,224 | 1,224 | 1,224 | 1,224 | 1,224 | 1,224 | 1,224 | 1,224 |
| Management Fees/Bonuses | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 | 2,290 |
| Office Expense | | | | | | | | | | | | |
| Other Interest | | | | | | | | | | | | |
| Repairs | | | | | | | | | | | | |
| Supplies | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Taxes - Real Estate | 25,598 | 25,598 | 25,598 | 25,598 | 25,598 | 25,598 | 25,598 | 25,598 | 25,598 | 25,598 | 25,598 | 25,598 |
| Travel and Entertainment | | | | | | | | | | | | |
| Utilities | 4,055 | 4,055 | 4,055 | 4,055 | 4,055 | 4,055 | 4,055 | 4,055 | 4,055 | 4,055 | 4,055 | 4,055 |
| Other (attach schedule) | 5,086 | 5,086 | 5,086 | 5,086 | 5,086 | 5,086 | 5,086 | 5,086 | 5,086 | 5,086 | 5,086 | 5,086 |
| Total Expenses | 44,753 | 46,753 | 42,753 | 42,753 | 42,753 | 42,753 | 42,753 | 42,753 | 42,753 | 42,753 | 42,753 | 42,753 |
| Debt Service | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | |
| U.S. Trustee Fees | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 |
| Court Costs | | | | | | | | | | | | |
| Net Income | (5,737) | (1,287) | 2,713 | 2,713 | 2,713 | 2,713 | 17,713 | 17,713 | 17,713 | 17,713 | 17,713 | 17,713 |
| Tenant Improvements | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Vacancy Allowance | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Net Cash Flow | (6,737) | (2,287) | 1,713 | 1,713 | 1,713 | 1,713 | 16,713 | 16,713 | 16,713 | 16,713 | 16,713 | 16,713 |