UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                    Chapter 11

      Lenox 126 Realty LLC                          Case no.  11-2275

                         Debtor.
-------------------------------------------------------------x


## SECOND AMENDED PLAN OF REORGANIZATION

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, New York 10017
Telephone: (212) 593-1100
Fascimile: (212) 644-0544


ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

Lenox 126 Realty LLC ("Debtor"), proposes this Plan of Reorganization for the Debtor.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## Article 1

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1    "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

1.2    "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

1.3    "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

1.4    "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files

2

an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's

schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or

contingent.

1.5    "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an

Allowed Claim.

1.6    "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent

it is an Allowed Claim.

1.7    "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

1.8    "Bankruptcy Code" shall mean Title 11 of the United States Code (11.

U.S.C. § 101 et. seq.

1.9    "Bankruptcy Court" shall mean the Court as defined below.

1.10    "Bar Date" shall mean September 27, 2011 at 5:00 p.m. Eastern time.

1.11    "Cash" shall mean all cash and cash equivalents which evidence

immediately available funds in United States dollars.

1.12    "Claim" shall mean a right to payment as set forth in § 101(5) of the

Bankruptcy Code.

1.13    "Claimant" shall mean the holder of a Claim.

1.14    "Confirmation Date" shall mean the date of the entry of the Confirmation

Order.

3

1.15    "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.16    "Confirmation Order" shall mean the order of the Court confirming the Plan.

1.17    "Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

1.18    "Creditor" shall mean any entity that holds a Claim against a Debtor.

1.19    "Debtor" shall mean Lenox 126 Realty LLC

1.20    "Disputed Claim" shall mean the whole or any portion of any claim against a Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

1.21    "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date after the Confirmation Date as may be practicable, provided, however, that the Effective Date shall be no later than ninety days after the Confirmation Date unless approved by the Bankruptcy Court.

1.22    "Estate" shall mean the estate of a Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

4

1.23    "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

1.24    "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

1.25    "Interest" shall mean an existing ownership interest in a Debtor.

1.26    "Interest Holder" shall mean a holder and owner of an existing Interest in a Debtor.

1.27    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.28    "Mortgagee" shall mean Griffon Heights LLC.

1.29    "Petition Date" shall mean May 2, 2010, the date of the Debtor's filing under Chapter 11 of the Bankruptcy Code.

1.30    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

1.31    "Property" shall mean the Debtor's real property located at 101 West 126th Street, a/k/a 321 Lenox Avenue, New York, New York .

1.32    "Secured Claim" shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

1.33     "Secured Creditor" shall mean the owner or holder of a Secured Claim.

1.34     "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against property of a Debtor or a Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

1.35     "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## Article 2

## CLAIMS CLASSIFICATION AND TREATMENT

## Class 1

2.1     **Classification** –  New York City real estate tax, water, sewer and other liens senior to the First Mortgage.

2.2     **Treatment --** Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

**Voting --**  Unimpaired and deemed to have accepted the Plan.

6

## CLASS 2

2.3    **Classification** – Griffon Heights LLC

2.4    **Treatment** --   Payment of available cash up to Allowed Amount of Class 2 Claim, after payment of administration claims, Class 1 Claims, Class 3 Claims, and $250,000 to be allocated to Class 4 payments.

2.5    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

## Class 3

2.6    **Classification** --   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.

2.7    **Treatment** -- Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

2.8    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

## Class 4

2.9    **Classification** -- General Unsecured Claims

2.10    **Treatment** -- Each Holder of a General Unsecured Claim shall be paid its pro-rata share of a (a) $250,000 minimum distribution fund to be carved out from the Mortgagee's distribution as a Class 2 Claimant, and (b) its pro-rata share of litigation proceeds in connection with the prosecution of claims against third parties.  The Mortgagee waives its right

7

to a distribution as Class 4 Claimant but not its right to vote as a class 4 Claimant.  The Debtor's

insiders waive their right to a distribution from the $250,000 carve out, but not their right to a

distribution from litigation proceeds, and not their right to vote a Class 4 Claimant.  31

Rockaway LLC waives its right to a distribution from litigation proceeds, but not from the

$250,000 carve out, and not its right to vote as a Class 4 Claimant.  The Debtor estimates a 10%

recovery to creditors entitled to distribution from the $250,000 carve out.  Distribution from

litigation proceeds is speculative at this time.

2.11    **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 5

2.12    **Classification** --  Equity Interests

2.13    **Treatment --**   Equity interests shall be paid such amount as may be

available, if any, after payment of all senior classes of Claims under the Plan.  The Debtor

estimates no distribution to Equity Interests.

2.14    **Voting --** Unimpaired and deemed to have accepted the Plan.

### Article 3

### ADMINISTRATION CLAIMS

3.1    Allowed Administrative Expenses shall be paid in full, in cash from the

proceeds of sale of the Debtor's Property on the Effective Date, or the date such Administrative

Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative

8

Expense agrees to a different treatment; provided however, that Allowed Administrative

Expenses representing obligations incurred in the ordinary course of business or assumed by the

Debtor shall be Paid in full or performed by the Debtor in the ordinary course of business or

pursuant to the terms and conditions of the particular transaction.  Any outstanding U.S. Trustee

fees shall be paid in full in Cash on the Effective Date.  United States Trustee fees will be paid,

and operating reports will be filed as they come due by the Debtor.

## Article 4

## MEANS FOR IMPLEMENTATION

4.1    **Property Transfer** -- Effective Date Plan payments, including payment of

administration claims, shall be made from the proceeds of sale of the Property.  The Debtor shall

take all necessary steps, and perform all necessary acts, to consummate the terms and conditions

of the Plan, including, without limitation, selling the Property pursuant to the sale procedures

provided for in the notice of sale annexed to the Plan as Exhibit A.  The transfer of the Property

under the Plan shall be free and clear of all commercial leases, liens, claims and encumbrances,

with any such liens, claims and encumbrances to attach to the sale proceeds, and to be disbursed

under the Plan, provided, however, that the Mortgagee shall have the right, but not the

obligation, to provide for an assignment of its mortgagee and assumption by the purchaser in

connection with the sale of the Property under the Plan.

4.2    **Sale Approval** -- As part of the sale under the Plan, and in order to ensure

consummation of the Plan, the Plan requires that  the Confirmation Order contain the following

9

findings of fact and conclusions of law: (a)  that the terms and conditions of the sale are fair and

reasonable, (b) that the Debtor's sale, and the purchaser's purchase, of the Property pursuant to

the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c)

that the transfer of the Property to the purchaser represents an arm's-length transaction and was

negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property,

is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full

protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not

controlled by an agreement among potential purchasers, (f) that no cause of action exists against

the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code

§ 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against

the Purchaser are hereby released, waived and discharged.

   4.3 **Release of Liens** -- In order to facilitate the sale to the Purchaser free and

clear of all liens claims and encumbrances, on the Effective Date, except as otherwise provided

in the Plan, and/or the the Confirmation Order, and concurrent with payment on the Effective

Date, the Plan provides that each holder of a Secured Claim, shall on the Effective Date (a) turn

over and release to the Reorganized Debtor any and all Collateral that secures or purportedly

secures such Claim, as it pertains to the property owned by the Debtor or such Lien shall

automatically, and without further action by the Debtor or the Reorganized Debtor, be deemed

released, and (b) execute such documents and instruments as the Reorganized Debtor requests to

evidence such Claim holder's release of such property or Lien.

4.4    **Transfer Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

4.5    **Vesting of Assets** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all commercial leases Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all commercial leases Claims and Interests of

11

Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the

Bankruptcy Court.

       4.6    **Execution of Documents** -- The Debtor shall be authorized to execute, in

the name of any necessary party, any notice of satisfaction, release or discharge of any Lien,

Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all

federal, state and local governmental agencies or departments for filing and recordation.

       4.7    **Recording Documents** -- Each and every federal, state and local

governmental agency or department shall be authorized to accept and record any and all

documents and instruments necessary, useful or appropriate to effectuate, implement and

consummate the transaction contemplated by the Plan, including, but not limited to any and all

notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly

preserved by the Plan, and the Confirmation Order.

       4.8    **Refinance Option –** Notwithstanding anything in the Plan or the

Disclosure Statement to the contrary, the Debtor shall have the absolute right at any time until

the Confirmation Hearing to refinance the Property by paying the Mortgagee the amount due on

its note and mortgage.

## PRESERVATION OF CLAIMS

       4.9    All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy

Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent

transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-

petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate.

## Article 5

## DISTRIBUTIONS TO CREDITORS

5.1     The Debtor shall be disbursing agent under the Plan.  The Debtor has not completed its claims review and reserves its right to file objections to claims in the event grounds exist to object to particular claims.  The Debtor may file objections to Claims for a period of 90 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## Article 6

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     All unexpired leases and executory contracts not rejected prior to the Effective Date shall be rejected under the Plan.  In the event of a rejection of any Executory

13

Contract which results in damage to the other party or parties to the Executory Contract, a Proof

of Claim for such damages must be filed by the damaged party with the Court within twenty (20)

days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory

Contract shall be treated as an Unsecured Claim.  Any Claim arising from the rejection of any

Executory Contract not filed with the Court within the time period provided in the preceding

paragraph above shall be deemed discharged and shall not be entitled to participate in any

distribution under the Plan.

   6.2 321 Restaurant LLC has asserted that it is a party to a lease to the Debtor's

ground floor restaurant space known as Units S2 and S3.  The Debtor disputes that it entered into

such a lease.  To the extent that such lease is deemed to exist, it is being rejected under the Plan.

### Article 7

### RETENTION OF JURISDICTION

7.1     Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings:

7.2     To consider any modification of the Plan under section 1127 of the Bankruptcy Code;

7.3     To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157.

7.4     To hear, determine and enforce all Claims  and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

7.5     To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

7.6     To value assets of the Estate.

7.7     To enforce the Confirmation Order, the final decree, and all injunctions therein;

7.8     To enter an order concluding and terminating the Bankruptcy Case;

15

7.9     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

7.10    To determine all questions and disputes regarding title to the assets of the Debtor.

7.11    To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

## Article 8

## GENERAL PROVISIONS

8.1     Headings.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

8.2     Disputed Claims.  The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

8.3     Calculation of Time Periods.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

8.4     Other Actions.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan under the Plan.

16

## Article 9

## PLAN MODIFICATION

9.1    Modification of Plan.  The Debtor may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

## Article 10

## INJUNCTION AND PROPERTY OF THE ESTATE

10.1    Injunction.  The confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

10.2    Vesting of Property.  Except as otherwise provided in the Plan, on the Effective Date title to all of the Debtor's assets shall pass to the post confirmation Debtor or its designee free and clear of all commercial leases Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

17

## <u>Article 11</u>

### <u>CLOSING THE CASE</u>

11.1    Upon substantial consummation, the Debtor may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

**Dated:** **New York, New York**
        **October 3, 2011**

                                    Lenox 126 Realty LLC
                                    Debtor and Debtor in Possession

              **By:**     **s/ Lorenzo A DeLuca, as Managing Member**


                          **BACKENROTH FRANKEL & KRINSKY, LLP**
                          **Attorneys for Debtor**


              **By:**     **s/Mark A. Frankel**
                          **489 Fifth Avenue**
                          **New York, New York 10017**
                          **(212) 593-1100**

18

## TERMS AND CONDITIONS OF SALE

1.  These Terms and Conditions of Sale are promulgated in connection with the private sale (the "Sale") of certain real property located at 101 West 126th Street, a/k/a 321 Lenox Avenue, New York, New York together with the personal property appurtenant thereto (the "Property").

2.  The Sale will be held on _____, 2011 at ____ __ m. in Judge Lane's courtroom at the United States Bankruptcy Court, the Alexander Hamilton Custom House, One Bowling Green, New York, New York.

3.  The Seller of the Property is Lenox 126 Realty LLC (the "Debtor"), in a Chapter 11 case pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 11-12275.  The sale is conducted pursuant to Bankruptcy Code section 363(b) and the Debtor's Chapter 11 Plan of Reorganization.

4.  The Debtor has received and accepted an offer from Griffon Heights LLC or its nominee ("Griffon"), to purchase the Debtor's Property in the amount of $6,500,000, a portion of which includes a credit bid pursuant to 11 U.S.C. § 363(k) based on the mortgage held by Griffon (the "Griffon Bid") as against the Property.  This offer is subject to any higher or better all cash offers tendered at the Sale.  The next acceptable bid must be all cash, and equal to or greater than $6,600,000.  Subsequent bids must be in increments equal to or greater than $25,000.00.  At the Sale, Griffon shall be entitled to increase the credit bid portion of the Griffon Bid up to the amount due on its note and mortgage which amount is estimated to be $11,826,049 as of May 12, 2011plus accrued interest and fees.

5.  In order to be permitted to bid on the Property, prior to the commencement of the
    Sale, each prospective bidder (except Griffon or its nominee)  must deliver to the
    Debtor a bank check in the amount of Nine Hundred Thousand Dollars ($900,000)
    (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as
    Attorneys for Lenox 126 Realty LLC, which amount shall serve as a good faith
    deposit against payment of the purchase price by such competing bidder once such
    bidder is determined to have made the highest or best bid for the Property (the
    "Successful Bidder").  In the event that an issue exists as to which of the various
    competing bids is higher or better, a hearing will be conducted before the Honorable
    Sean H. Lane, United States Bankruptcy Judge, at United States Bankruptcy Court,
    Alexander Hamilton Courthouse, One Bowling Green, New York, New York, upon
    the conclusion of the Sale.  The Successful Bidder must execute, and thereby agree to
    be bound by (i) these Terms and Conditions of Sale, and (ii) a Memorandum of Sale.
    At the conclusion of the Sale, the Debtor's counsel will return the Qualifying
    Deposits to all other bidders.

6.  The Successful Bidder, if not Griffon, must pay the balance of the Purchase Price for
    the Property (the difference between the amount of the successful bid and the
    Qualifying Deposit) to the Debtor, by bank check, or wire transfer at the closing of
    title to the Property (the "Closing").  The Successful Bidder must close title to the
    Property at a date that is no more than thirty (30) days after the Order by the
    Bankruptcy Court approving the Sale becomes final and non-appealable, TIME

2

BEING OF THE ESSENCE as to the purchaser, although such date may be extended

solely by the Debtor.  At the Closing, the  Successful Bidder, if Griffon or its

nominee pursuant to the Griffon Bid, shall pay cash consideration to the Debtor

sufficient to cover the following claims under the Debtor's Chapter 11 plan: (i) such

amount as may be necessary to satisfy any unpaid New York City real property tax,

water and sewer charges and other New York City liens against the Property senior to

the Griffon mortgage; (ii) such amount as may be necessary to pay priority claims

under the Plan, (iii) $250,000 to be distributed to general unsecured creditors under

the Debtor's Plan, and (iv) such amount as may be necessary to pay Chapter 11

administration claims and United States Trustee fees under the Plan; and the

remainder of the purchase price may, at Griffon's discretion, be satisfied by credit bid

or by authorizing Griffon's nominee to assume the Griffon mortgage on the Property.

7.   To the extent applicable, the Successful Bidder shall pay any real property transfer

taxes incurred by the Transfer of the Property by the Debtor at the Closing.  Purchaser

acknowledges that it will be responsible for the completion of any ACRIS forms.

8.   Time is of the Essence as Against the Successful Bidder and the failure of the

Successful Bidder to close for any reason whatsoever (except as otherwise provided

below) including its failure to pay the balance of the Purchase Price on the Closing

Date, will result in the Debtor retaining the deposit as liquidated damages and the

termination of the Successful Bidder's right to acquire the Property under these

Terms and Conditions of Sale.  The Successful Bidder shall be obligated to close title

3

to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the Debtor's inability to deliver a quit claim deed to the Property. Further, the Successful Bidder shall have demonstrated, to the sole satisfaction of the Debtor or the Court, as the case may be, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale, without delay.  The Debtor reserves the right to reject any bid by an offeror who, in the reasonable discretion of the Debtor, the Debtor believes is not financially capable of consummating the purchase of the Property.  Expenses incurred by the Successful Bidder, or any competing bidder concerning any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Debtor or the Debtor's professionals be responsible for, or pay, such expenses.

9.   In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Debtor, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate.  Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Debtor to

4

the Second Highest Bidder, the Debtor shall be authorized to sell the Property to the

next highest or best bidder, without the necessity of any further notice.  All bidders

will be bound by these Terms and Conditions of Sale, including, without limitation,

those items set forth in paragraphs 7, 7 and 8 hereof, except that the Second Highest

Bidder must close within thirty (30) days of notification that his bid is accepted.

10. The Debtor and the Debtor's professionals have not made and do not make any

representations as to the physical condition, rents, leases, expenses, operations, value

of the land or buildings thereon, or any other matter or thing affecting or related to the

Property or the Sale, which might be pertinent to the purchase of the Property,

including, without limitation, (i) the current or future real estate tax liability,

assessment or valuation of the Property; (ii) the potential qualification of the Property

for any and all benefits conferred by or available under federal, state or municipal

laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or

any other benefits, whether similar or dissimilar to those enumerated; (iii) the

compliance or non-compliance of the Property, in its current or any future state, with

applicable present or future zoning ordinances or other land use law or regulation, or

the ability to obtain a change in the zoning or use, or a variance in respect to the

Property; (iv) the availability of any financing for the purchase, alteration,

rehabilitation or operation of the Property from any source, including, but not limited

to, any state, city or federal government or institutional lender; (v) the current or

future use of the Property; (vi) the present and future condition and operating state of

5

any and all machinery or equipment on the Property and the present or future

structural and physical condition of any building thereon or its suitability for

rehabilitation or renovation; (vii) the ownership or state of title of any personal

property on the Property; (viii) the presence or absence of any laws, ordinances, rule

or regulations issued by any governmental authority, agency or board and any

violations thereof; (ix) any present or future issues concerning subdivision or non-

subdivision of the Property; or (x) the compliance or non-compliance with

environmental laws and the presence or absence of underground fuel storage tanks,

any asbestos or other hazardous materials anywhere on the Property.  Each bidder

shall be deemed to have agreed and acknowledged that no such representations have

been made.  The Debtor is not liable or bound in any manner by expressed or implied

warranties, guaranties, promises, statements, representations or information

pertaining to the Property, made or furnished by the Debtor or any real estate broker

agent, employee, servant or other person or professional representing or purporting to

represent the Debtor unless such warranties, guaranties, promises, statements,

representations or information are expressly and specifically set forth in writing by

the Debtor.  The Property will be delivered subject to all valid, then existing tenancies

at the time of the Closing, provided, however, that notwithstanding anything to the

contrary in this paragraph, these terms of sale or the Debtor's Plan, the Property is

being sold free and clear of any lease asserted by 321 Restaurant, LLC.

6

11. The Property is being sold free and clear of mortgages, judgment liens and any lease asserted by 321 Restaurant, LLC, with such mortgages and judgment liens to attach to the net proceeds of sale after deduction of any expenses of sale.  Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) all occupancies, if any, that may exist or encumber the Property or any portion(s) thereof; and (f) environmental conditions.  If the sale is to Griffon or its nominee then the sale shall be subject to the pre-existing mortgage held by Griffon.  By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither the Debtor nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property.  All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and

7

are not relying on any information provided by the Debtor or the Debtor's

professionals.

12. All real estate taxes will be prorated as of midnight, the day prior to the Closing.

13. The Debtor shall convey the Property by delivery of a Quitclaim Deed.  The quality

of title shall be that which any reputable title insurance company authorized to do

business in the State of New York is willing to approve and insure.

14. Neither the Debtor nor Debtor's counsel is liable or responsible for the payment of

fees of any broker.

15. Nothing contained in these Terms and Conditions of Sale is intended to supersede or

alter any provisions of Title 11 of the United States Code (the "Bankruptcy Code") or

otherwise interfere with the jurisdiction of the Bankruptcy Court.  All of the terms

and conditions set forth in these Terms and Conditions of Sale are subject to

modification as may be reasonably directed by the Debtor or by the Court.  The

Debtor reserves the right to reasonably modify these Terms and Conditions of Sale at

the Sale or thereafter to maintain consistency with the provisions of the Bankruptcy

Code the Debtor's Plan and/or prior orders of the Court.

16. These Terms and Conditions of Sale will be read into the record, or specifically

incorporated by reference, at the Sale of the Property.  By making a bid for the

Property, all bidders will be deemed to have acknowledged having read these Terms

and Conditions of Sale and have agreed to be bound by them.

8

17. If the Debtor is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to confirm the Debtor's Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, the Debtor's only obligation will be to refund the Deposit, together with any interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Debtor or the Debtor's professionals.

18. The Debtor reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason whatsoever, as the Debtor deems necessary or appropriate.

19. The Sale of the Property is subject to confirmation of the Debtor's Plan and approval by the Bankruptcy Court.

20. The Debtor or its attorney shall notify the Successful Bidder whether the Sale is approved and the Debtor's Plan confirmed.  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                    Chapter 11

            Lenox 126 Realty LLC                         Case no.  11-12275

                              Debtor.
-------------------------------------------------------------x

NOTICE OF SALE

            PLEASE TAKE NOTICE, that upon the application of Lenox 126 Realty LLC
("Debtor"), a hearing ("Hearing") will be held on _____ at _____ __.m., or
as soon thereafter as counsel can be heard, before the Honorable Sean H. Lane, at the United
States Bankruptcy Court, One Bowling Green, New York, New York 10004, to approve the sale
of that certain property located at 321 Lenox Avenue, New York, New York, together with the
personal property appurtenant thereto ("Property") to Griffon Heights LLC or its designee
("Griffon") for $6,500,000 representing cash and credit towards Griffon Heights LLC first
mortgage lien against the Property, subject to higher and/or better offers.  The Property shall be
sold "as is."  Except for Griffon, bidding shall be limited to all cash offers, and the minimum
opening bid shall be $6,600,000.  All prospective bidders, except Griffon, shall be required to
deposit $900,000 in escrow with the undersigned Debtor's counsel by bank check or wire deposit
on or before _____, 2011 at 5:00 p.m.  The highest bidder at the Hearing shall be the
purchaser (the "Purchaser") of the Property, free and clear of all commercial leases, liens, claims
and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of
sale.  Griffon shall have the right, but not the obligation, to assign it mortgage to the Purchaser.
The Deposit shall be non-refundable in the event Purchaser fails to close on or before thirty days
after the Hearing, and in the event the Purchaser fails to so close, the Deposit shall be remitted to
Griffon, to be applied to Griffon's claim.  In the event the Purchaser closes on or before thirty
days after the Hearing, the Deposit shall be applied to the purchase price.  Time shall be of the
essence in the closing of this transaction.  In the event Purchaser fails to close as set forth herein,
then the Debtor shall retain the right to accept the bid next highest in amount to the original
Purchaser's bid.

            PLEASE TAKE FURTHER NOTICE, that a complete copy of the terms and
conditions of sale is attached to the Debtor's Chapter 11 plan filed in the Bankruptcy Court and
is available upon request of the undersigned.


Dated: Brooklyn, New York
          _____, 2011

                                            Backenroth Frankel & Krinsky, LLP
                                            489 Fifth Avenue
                                            New York, New York  10017
                                            (212) 593-1100