UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                             Chapter 11

      Lenox 126 Realty LLC                    Case no.  11-12275

                Debtor.
------------------------------------------------------------x

## SECOND AMENDED DISCLOSURE STATEMENT

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, New York 10017
Telephone: (212) 593-1100
Fascimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

1. The Debtor submits this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances of its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code. A copy of the Plan is attached hereto as <u>Exhibit "A"</u>. All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement. <u>All capitalized terms used but not defined herein shall have the meaning set forth in the Plan.</u>

2. This Disclosure Statement is not intended to replace a review and analysis of the Plan. Rather, it is submitted as a review of the Plan in an effort to explain the terms and implications of the Plan. Every effort has been made to fully explain the various aspects of the Plan as it affects all Creditors. To the extent a Creditor has any questions, the Debtor urges you to contact its counsel and every effort will be made to assist you. THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THE PLAN. THE DEBTOR'S GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE PLAN. IF ALL CREDITOR CLASSES DO NOT ACCEPT THE PLAN, THE DEBTOR INTENDS TO SEEK CRAMDOWN OF THE PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT CONFIRMATION OF THE PLAN.

3. On _____, 2011, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor

and the condition of the Debtor's books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan.

4.     Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan.  No solicitation of votes may be made except pursuant to this Disclosure Statement.  EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

5.     THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR.  THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S FINANCIAL CONDITION AS SET FORTH IN THIS DISCLOSURE STATEMENT.  BASED UPON THE INFORMATION MADE AVAILABLE, DEBTOR'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE.  NEITHER THE DEBTOR NOR ITS COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

6.      After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtor so as to be received on or before _____, 2011.

7.      The Bankruptcy Court has entered an Order fixing _____, 2011, at .m., at the United States Bankruptcy Court, One Bowling Green, New York, New York, as the date, time and place for the hearing on confirmation of the Plan, and fixing _____, 2011, as the last date for the filing of any objections to confirmation of the Plan.

## SUMMARY OF PLAN DISTRIBUTIONS

| Class | Treatment |
|---|---|
| Class 1: New York City real estate tax, water, sewer and other liens senior to the First Mortgage. Claims total approximately $316,400. | Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment. |
| Class 2: Griffon Heights LLC . Claim totals approximately $11,826,049 as of May 12, 2011. | Payment of available cash up to Allowed Amount of Class 2 Claim, after payment of administration claims, Class 1 Claims, Class 3 Claims, and $250,000 to be allocated to Class 4 payments. |
| Class 3: Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. Claims total approximately $1,600 | Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment. |
| Class 4: General Unsecured Claims Claims total approximately $6,327,449. Claims include (a) Griffon Heights LLC $3,142,449 mortgage deficiency claim, (b) 31 Rockaway LLC $2,500,000 unpaid note, (c) insider claims of Calabrese Investors LLC in the amount of $600,000 and Lorenzo Deluca, Esq. in the amount of $45,000 and (d) various vendor claims in the amount of approximately $40,000. | Each Holder of a General Unsecured Claim shall be paid its pro-rata share of a (a) $250,000 minimum distribution fund to be carved out from the Mortgagee's distribution as a Class 2 Claimant, and (b) its pro-rata share of litigation proceeds in connection with the prosecution of claims against third parties. The Mortgagee waives its right to a distribution as Class 4 Claimant but not its right to vote as a class 4 Claimant. The Debtor's insiders waive their right to a distribution from the $250,000 carve out, but not their right to a distribution from litigation proceeds, and not their right to vote a Class 4 Claimant. 31 Rockaway LLC waives its right to a distribution from litigation proceeds, but not from the $250,000 carve out, and not its right to vote as a Class 4 Claimant. The Debtor estimates a 10% recovery to creditors entitled to distribution from the $250,000 carve out. Distribution from litigation proceeds is speculative at this time. |
| Class 5: Equity Interests | Equity interests shall be paid such amount as may be available, if any, after payment of all senior classes of Claims under the Plan. The Debtor estimates no distribution to Equity Interests. |

## BACKGROUND

8.      On January 26, 2011, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code").

9.      The Debtor owns a parcel of real property located at 101 West 126th Street, a/k/a 321 Lenox Avenue, New York, New York (the "Property").  The Property is a 6 story apartment building, with 32 residential units, 2 commercial units, and 2 cell towers.

10.     The Property has a $9,000,000 value.  Such value is based upon purchase offers for the property received within two months of the Chapter 11 filing.

11.     The Property is encumbered by real estate tax, water and sewer liens in the amount of approximately $316,400.

12.     Griffon Heights LLC (the "Lender" or the "Mortgagee") asserts a first mortgage claim in the amount of $11,826,049 as of May 12, 2011.  $3,142,449 is unsecured based upon the $9,000,000 Property value and the $316,400 senior liens of the City of New York.

13.     In addition, the Property is encumbered by a subordinate lien claim in the amount of approximately $2,500,000.

14.     The Debtor's general unsecured claims, including the undersecured portion of the Mortgagee's Claim, the subordinate lien and other general unsecured claims, total approximately $6,327,449.

15.     The Debtor's financial problems arise from the economic downturn which inhibited the Debtor's ability to keep up with the mortgage and upkeep of the Property.  The

Debtor's objective in this Chapter 11 case was to stabilize the Debtor's finances, so that ultimately the Property could be refinanced or sold for the benefit of all interested parties. In this case, the Mortgagee agreed to allow the Debtor to operate the Property and gave the Debtor until August 22, 2011 to refinance, on the condition that if Refinancing was not feasible by that time, the Debtor would propose a plan of reorganization that provided for a sale of the Property The Debtor was unable to refinance, and hence, the Debtor is proposing to sell the Property under the Plan. The Lender has agreed to an opening bid of $6,500,000. The Lender has agreed, however, that the Debtor shall be entitled at any time until the Confirmation Hearing to refinance the Property by paying the Mortgagee the amount due on its secured claim.

### **DEBTOR'S PLAN OF REORGANIZATION**

### **CLASSIFICATION AND TREATMENT OF CLAIMS**

### **Class 1**

16.     **Classification** – New York City real estate tax, water, sewer and other liens senior to the First Mortgage. Claims total approximately $316,400

17.     **Treatment** -- Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

18.     **Voting** -- Unimpaired and deemed to have accepted the Plan.

## Class 2

19.    **Classification** – Griffon Heights LLC  Claim totals approximately $11,826,049 as of the Filing Date.

20.    **Treatment** –  Payment of available cash up to Allowed Amount of Class 2 Claim, after payment of administration claims, Class 1 Claims, Class 3 Claims, and $250,000 to be allocated to Class 4 payments.

21.    **Voting** –  Impaired and entitled to vote to accept or reject the Plan.

## Class 3

22.    **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.  Claims total approximately $1,600

23.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

24.    **Voting --** Unimpaired and deemed to have accepted the Plan.

## Class 4

25.    **Classification** –  General Unsecured Claims.  Claims total approximately $6,327,449.  Claims include (a) Griffon Heights LLC $3,142,449 mortgage deficiency claim, (b) 31 Rockaway LLC $2,500,000 unpaid note, (c) insider claims of Calabrese Investors LLC in the

amount of $600,000 and Lorenzo Deluca, Esq. in the amount of $45,000 and (d) various vendor claims in the amount of approximately $40,000.

26.    **Treatment** – Each Holder of a General Unsecured Claim shall be paid its pro-rata share of a (a) $250,000 minimum distribution fund to be carved out from the Mortgagee's distribution as a Class 2 Claimant, and (b) its pro-rata share of litigation proceeds in connection with the prosecution of claims against third parties.  The Mortgagee waives its right to a distribution as Class 4 Claimant but not its right to vote as a class 4 Claimant.  The Debtor's insiders waive their right to a distribution from the $250,000 carve out, but not their right to a distribution from litigation proceeds, and not their right to vote a Class 4 Claimant.  31 Rockaway LLC waives its right to a distribution from litigation proceeds, but not from the $250,000 carve out, and not its right to vote as a Class 4 Claimant.  The Debtor estimates a 10% recovery to creditors entitled to distribution from the $250,000 carve out.  Distribution from litigation proceeds is speculative at this time.

27.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**<u>Class 5</u>**

28.     **<u>Classification</u>** –  Equity Interests.

29.     **<u>Treatment</u>** –   Equity interests shall be paid such amount as may be available, if any, after payment of all senior classes of Claims under the Plan.  The Debtor estimates no distribution to Equity Interests.

30.     **<u>Voting</u>** – Impaired and entitled to vote to accept or reject the Plan.

**<u>ADMINISTRATIVE EXPENSES</u>**

31.     Allowed Administrative Expenses shall be paid in full, in cash from the proceeds of sale of the Debtor's Property on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; <u>provided</u>, <u>however</u>, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction. The Debtor estimates that as of the Confirmation Date, unpaid Chapter 11 professional fees will total approximately $30,000 for Debtor's counsel.

32.     All outstanding United States Trustee fees shall be paid as they come due, provided however, that all outstanding United States Trustee fees due at the time of sale, or triggered by the distribution of sale proceeds, shall be paid from the sale proceeds

## MEANS FOR IMPLEMENTATION

33.     **Property Transfer** – Effective Date Plan payments, including payment of administration claims, shall be made from the proceeds of sale of the Property.  The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, including, without limitation, selling the Property pursuant to the sale procedures provided for in the notice of sale annexed to the Plan as Exhibit A.  The transfer of the Property under the Plan shall be free and clear of all commercial leases, liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and to be disbursed under the Plan, provided, however, that the Mortgagee shall have the right, but not the obligation, to provide for an assignment of its mortgagee and assumption by the purchaser in connection with the sale of the Property under the Plan.

34.     **Sale Approval** -- As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that  the Confirmation Order contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against

the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

35.     **Release of Liens** -- In order to facilitate the sale to the Purchaser free and clear of all liens claims and encumbrances, on the Effective Date, except as otherwise provided in the Plan, and/or the the Confirmation Order, and concurrent with payment on the Effective Date, the Plan provides that each holder of a Secured Claim, shall on the Effective Date (a) turn over and release to the Reorganized Debtor any and all Collateral that secures or purportedly secures such Claim, as it pertains to the property owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Reorganized Debtor, be deemed released, and (b) execute such documents and instruments as the Reorganized Debtor requests to evidence such Claim holder's release of such property or Lien.

36.     **Transfer Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or

securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

37. **Vesting of Assets** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all commercial leases Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all commercial leases Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

38. **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

39. **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all

documents and instruments necessary, useful or appropriate to effectuate, implement and
consummate the transaction contemplated by the Plan, including, but not limited to any and all
notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly
preserved by the Plan, and the Confirmation Order.

40.     **Refinance Option** – Notwithstanding anything in the Plan or the
Disclosure Statement to the contrary, the Debtor shall have the absolute right at any time until
the Confirmation Hearing to refinance the Property by paying the Mortgagee the amount due on
its note and mortgage.

## LIQUIDATION ANALYSIS

41.     In a liquidation under Chapter 7 of the Bankruptcy Code, the Debtor's
assets would be sold and the sale proceeds distributed to creditors in their order of priority.  The
Debtor believes that the Plan provides a far better return for the Debtor's estate than could be
achieved in a liquidation.  Indeed, as set forth on Exhibit B hereto, the Debtor projects that in a
Chapter 7 liquidation, general unsecured creditors would receive no distribution.

42.     Under the Plan, the Mortgagee has agreed to cause $250,000 of the sale
proceeds that would otherwise be paid towards satisfaction of its Secured Claim to be distributed
to general unsecured creditors under the Plan, and has agreed to waive its right to any
distribution as an unsecured creditor in order to enhance distributions to the other general
unsecured creditors.  It would be extremely unlikely that a Chapter 7 Trustee could achieve such
a result.

14

43.     Finally, a Chapter 7 Trustee represents an additional layer of administration legal expenses and commissions, which the Debtor estimates would total at least 10% of the sale proceeds.

## LITIGATION ANALYSIS

44.     Post confirmation, the Debtor intends to pursue the following claims:  (a) an action pending in Supreme Court New York County against Bank of America for conversion of multiple individual rent checks made payable to the Debtor and wrongfully accepted for deposit into a third party bank account, (b) an action against Nick and Aspasia Gatanas, former principals of the Debtor for claims arising in connection with the Bank of America litigation, and (c) an action to be instituted against Chinatrust Bank in connection with its failure to turn over Debtor's funds in a frozen bank account, recovery of a contract deposit, recovery of misapplied funds, and RICO conspiracy to deprive the Debtor of its property.  The Proceeds of such claims will disbursed to Class 4 Claimants as set forth in the Plan.

45.     In addition, various landlord tenant actions which will continue post-confirmation.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

46.     The Debtor shall be disbursing agent under the Plan, with no bond.  The Debtor has not completed its claims review and reserves its right to file objections to claims in the event grounds exist to object to particular claims.  The Debtor may file objections to Claims for a period of 60 days after the Effective Date.  On the initial distribution date and on each

distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full. To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim. After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

47. All unexpired leases and executory contracts not rejected prior to the Effective Date shall be rejected under the Plan. In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within twenty (20) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim. Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

48. In this case, an entity named 321 Restaurant LLC has asserted that it is a party to a lease to the Debtor's ground floor restaurant space known as Units S2 and S3. The

16

Debtor disputes that it entered into such a lease. To the extent that such lease is found to exist, it is being rejected under the Plan.

## MANAGEMENT OF THE DEBTOR

49. The Debtor is managed by Lorenzo A DeLuca, as Managing Member, the Debtor's managing member. Post-confirmation, the Debtor shall be dissolved after the Plan implementation has been completed.

## TAX CONSEQUENCES

50. The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan. To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction. To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

51. **THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN. CREDITORS AND INTEREST HOLDER SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.**

## VOTING PROCEDURES AND REQUIREMENTS

52.     A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 2011, at the following address:  Backenroth Frankel & Krinsky, LLP, 489 Fifth Avenue, New York, New York  10017, Attn:  Mark A. Frankel, Esq.

53.     Each Creditor of the Debtor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor, or (ii) it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filings.

54.     Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

55.     A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

56.     The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

57.     The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## CONFIRMATION OF THE PLAN

58.     Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

59.     By order of the Bankruptcy Court dated _____, 2011, the Confirmation Hearing has been scheduled for _____, 2011, at ___ .m., in the Honorable Sean H. Lane's courtroom the United States Bankruptcy Court, One Bowling Green, New York, New York.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before , 2011:  Backenroth Frankel & Krinsky, LLP, 489 Fifth Avenue, New York, New York  10017, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

60.     At the Confirmation Hearing, the Bankruptcy Court will determine

whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an

order confirming the Plan.  The applicable requirements are as follows:  (a)  The Plan complies

with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the

applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and

not by any means forbidden by law, (d) any payment made or promised or by a person issuing

securities or acquiring property under the Plan, for services or for costs and expenses in, or in

connection with, the Bankruptcy Case, or in connection with the Plan and incident to the

Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made

before the confirmation of the Plan is reasonable, or if such payment is to be fixed after

confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as

reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed

to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an

affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under

the Plan, and the appointment to, or continuance in, such office of such individual, is consistent

with the interests of Creditors and equity security holders and with public policy, and the Debtor

has disclosed the identity of any insider that will be employed or retained by the reorganized

Debtor, and the nature of any compensation for such insider, (f) with respect to each class of

impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or

will receive or retain under the Plan on account of such Claim or interest property of a value, as

of the Effective Date of the Plan, an amount that is not less than the amount that such holder

would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

61.     The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

62.     The Debtor contends that holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

**<u>CRAMDOWN</u>**

63.     In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each

impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

64.     The debtor intends to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan.

65.     A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity interests.  "Fair and equitable" has different meanings for Secured and Unsecured Claims.

66.     With respect to a Secured Claim, "fair and equitable" means either: (a)  the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or  (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

67.     With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

68.     In the event one or more classes of impaired Claims rejects the Plan, the

Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and

equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

## **CONCLUSION**

69.     The Debtor urges the Debtor's Creditors to vote to accept the Plan and to

evidence such acceptance by returning their ballots so that they will be received no later than

_____.

Dated: New York, New York
       October 3, 2011

                              Lenox 126 Realty LLC
                              Debtor and Debtor in Possession

                      **By:    s/ Lorenzo A DeLuca, as Managing Member**


                              **BACKENROTH FRANKEL & KRINSKY, LLP**
                              **Attorneys for Debtor**


                              By:    s/Mark Frankel
                                     489 Fifth Avenue
                                     New York, New York 10017
                                     (212) 593-110

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                        Chapter 11

    Lenox 126 Realty LLC                      Case no.  11-2275

                Debtor.
-----------------------------------------------------------x




## <u>SECOND AMENDED PLAN OF REORGANIZATION</u>

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
489 Fifth Avenue
New York, New York 10017
Telephone: (212) 593-1100
Fascimile: (212) 644-0544


ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

Lenox 126 Realty LLC ("Debtor"), proposes this Plan of Reorganization for the Debtor. UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## Article 1

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1 "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

1.2 "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

1.3 "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

1.4 "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files

2

an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

1.5    "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

1.6    "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

1.7    "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

1.8    "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.

1.9    "Bankruptcy Court" shall mean the Court as defined below.

1.10    "Bar Date" shall mean September 27, 2011 at 5:00 p.m. Eastern time.

1.11    "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

1.12    "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

1.13    "Claimant" shall mean the holder of a Claim.

1.14    "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

1.15    "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

1.16    "Confirmation Order" shall mean the order of the Court confirming the Plan.

1.17    "Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

1.18    "Creditor" shall mean any entity that holds a Claim against a Debtor.

1.19    "Debtor" shall mean Lenox 126 Realty LLC

1.20    "Disputed Claim" shall mean the whole or any portion of any claim against a Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

1.21    "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date after the Confirmation Date as may be practicable, provided, however, that the Effective Date shall be no later than ninety days after the Confirmation Date unless approved by the Bankruptcy Court.

1.22    "Estate" shall mean the estate of a Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.23　　"Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

1.24　　"Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

1.25　　"Interest" shall mean an existing ownership interest in a Debtor.

1.26　　"Interest Holder" shall mean a holder and owner of an existing Interest in a Debtor.

1.27　　"Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.28　　"Mortgagee" shall mean Griffon Heights LLC.

1.29　　"Petition Date" shall mean May 2, 2010, the date of the Debtor's filing under Chapter 11 of the Bankruptcy Code.

1.30　　"Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

1.31　　"Property" shall mean the Debtor's real property located at 101 West 126th Street, a/k/a 321 Lenox Avenue, New York, New York .

1.32　　"Secured Claim" shall mean a Claim secured by a Lien on property included within a Debtor's Estate.

1.33    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

1.34    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against property of a Debtor or a Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

1.35    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## Article 2

## CLAIMS CLASSIFICATION AND TREATMENT

## Class 1

2.1    **Classification** –  New York City real estate tax, water, sewer and other liens senior to the First Mortgage.

2.2    **Treatment --** Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

**Voting --**  Unimpaired and deemed to have accepted the Plan.

# CLASS 2

2.3     **Classification** – Griffon Heights LLC

2.4     **Treatment --**   Payment of available cash up to Allowed Amount of Class 2 Claim, after payment of administration claims, Class 1 Claims, Class 3 Claims, and $250,000 to be allocated to Class 4 payments.

2.5     **Voting --** Impaired and entitled to vote to accept or reject the Plan.

## Class 3

2.6     **Classification --**   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.

2.7     **Treatment --** Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

2.8     **Voting --** Impaired and entitled to vote to accept or reject the Plan.

## Class 4

2.9     **Classification --** General Unsecured Claims

2.10     **Treatment --** Each Holder of a General Unsecured Claim shall be paid its pro-rata share of a (a) $250,000 minimum distribution fund to be carved out from the Mortgagee's distribution as a Class 2 Claimant, and (b) its pro-rata share of litigation proceeds in connection with the prosecution of claims against third parties. The Mortgagee waives its right

to a distribution as Class 4 Claimant but not its right to vote as a class 4 Claimant. The Debtor's insiders waive their right to a distribution from the $250,000 carve out, but not their right to a distribution from litigation proceeds, and not their right to vote a Class 4 Claimant. 31 Rockaway LLC waives its right to a distribution from litigation proceeds, but not from the $250,000 carve out, and not its right to vote as a Class 4 Claimant. The Debtor estimates a 10% recovery to creditors entitled to distribution from the $250,000 carve out. Distribution from litigation proceeds is speculative at this time.

2.11 **Voting** -- Impaired and entitled to vote to accept or reject the Plan.

### Class 5

2.12 **Classification** -- Equity Interests

2.13 **Treatment --** Equity interests shall be paid such amount as may be available, if any, after payment of all senior classes of Claims under the Plan. The Debtor estimates no distribution to Equity Interests.

2.14 **Voting --** Unimpaired and deemed to have accepted the Plan.

### Article 3

### ADMINISTRATION CLAIMS

3.1 Allowed Administrative Expenses shall be paid in full, in cash from the proceeds of sale of the Debtor's Property on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative

Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be Paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction. Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date. United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtor.

## Article 4

## MEANS FOR IMPLEMENTATION

4.1     **Property Transfer** -- Effective Date Plan payments, including payment of administration claims, shall be made from the proceeds of sale of the Property. The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, including, without limitation, selling the Property pursuant to the sale procedures provided for in the notice of sale annexed to the Plan as Exhibit A. The transfer of the Property under the Plan shall be free and clear of all commercial leases, liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and to be disbursed under the Plan, provided, however, that the Mortgagee shall have the right, but not the obligation, to provide for an assignment of its mortgagee and assumption by the purchaser in connection with the sale of the Property under the Plan.

4.2     **Sale Approval** -- As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that  the Confirmation Order contain the following

findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

      4.3   **Release of Liens** -- In order to facilitate the sale to the Purchaser free and clear of all liens claims and encumbrances, on the Effective Date, except as otherwise provided in the Plan, and/or the the Confirmation Order, and concurrent with payment on the Effective Date, the Plan provides that each holder of a Secured Claim, shall on the Effective Date (a) turn over and release to the Reorganized Debtor any and all Collateral that secures or purportedly secures such Claim, as it pertains to the property owned by the Debtor or such Lien shall automatically, and without further action by the Debtor or the Reorganized Debtor, be deemed released, and (b) execute such documents and instruments as the Reorganized Debtor requests to evidence such Claim holder's release of such property or Lien.

4.4 **Transfer Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

4.5 **Vesting of Assets** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all commercial leases Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all commercial leases Claims and Interests of

11

Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

4.6 **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

4.7 **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

4.8 **Refinance Option –** Notwithstanding anything in the Plan or the Disclosure Statement to the contrary, the Debtor shall have the absolute right at any time until the Confirmation Hearing to refinance the Property by paying the Mortgagee the amount due on its note and mortgage.

## PRESERVATION OF CLAIMS

4.9 All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-

petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate.

## Article 5

## DISTRIBUTIONS TO CREDITORS

5.1 The Debtor shall be disbursing agent under the Plan. The Debtor has not completed its claims review and reserves its right to file objections to claims in the event grounds exist to object to particular claims. The Debtor may file objections to Claims for a period of 90 days after the Effective Date. On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full. To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim. After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## Article 6

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1 All unexpired leases and executory contracts not rejected prior to the Effective Date shall be rejected under the Plan. In the event of a rejection of any Executory

Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within twenty (20) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract shall be treated as an Unsecured Claim. Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

      6.2     321 Restaurant LLC has asserted that it is a party to a lease to the Debtor's ground floor restaurant space known as Units S2 and S3. The Debtor disputes that it entered into such a lease. To the extent that such lease is deemed to exist, it is being rejected under the Plan.

**Article 7**

**RETENTION OF JURISDICTION**

7.1     Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings:

7.2     To consider any modification of the Plan under section 1127 of the Bankruptcy Code;

7.3     To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157.

7.4     To hear, determine and enforce all Claims  and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

7.5     To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

7.6     To value assets of the Estate.

7.7     To enforce the Confirmation Order, the final decree, and all injunctions therein;

7.8     To enter an order concluding and terminating the Bankruptcy Case;

7.9     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

7.10    To determine all questions and disputes regarding title to the assets of the Debtor.

7.11    To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims.

## Article 8

## GENERAL PROVISIONS

8.1     Headings.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

8.2     Disputed Claims.  The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim becomes an Allowed Claim.

8.3     Calculation of Time Periods.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

8.4     Other Actions.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan under the Plan.

## Article 9

## PLAN MODIFICATION

9.1     Modification of Plan.  The Debtor may seek amendments or modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

## Article 10

## INJUNCTION AND PROPERTY OF THE ESTATE

10.1     Injunction.  The confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

10.2     Vesting of Property.  Except as otherwise provided in the Plan, on the Effective Date title to all of the Debtor's assets shall pass to the post confirmation Debtor or its designee free and clear of all commercial leases Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

## <u>Article 11</u>

## <u>CLOSING THE CASE</u>

11.1     Upon substantial consummation, the Debtor may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

**Dated:** **New York, New York**
          **October 3, 2011**

Lenox 126 Realty LLC
Debtor and Debtor in Possession

**By:**     **s/ Lorenzo A DeLuca, as Managing Member**


**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for Debtor**


**By:**     **s/Mark A. Frankel**
          **489 Fifth Avenue**
          **New York, New York 10017**
          **(212) 593-1100**

## TERMS AND CONDITIONS OF SALE

1. These Terms and Conditions of Sale are promulgated in connection with the private sale (the "Sale") of certain real property located at 101 West 126th Street, a/k/a 321 Lenox Avenue, New York, New York together with the personal property appurtenant thereto (the "Property").

2. The Sale will be held on _____, 2011 at ____ __ m. in Judge Lane's courtroom at the United States Bankruptcy Court, the Alexander Hamilton Custom House, One Bowling Green, New York, New York.

3. The Seller of the Property is Lenox 126 Realty LLC (the "Debtor"), in a Chapter 11 case pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 11-12275.  The sale is conducted pursuant to Bankruptcy Code section 363(b) and the Debtor's Chapter 11 Plan of Reorganization.

4. The Debtor has received and accepted an offer from Griffon Heights LLC or its nominee ("Griffon"), to purchase the Debtor's Property in the amount of $6,500,000, a portion of which includes a credit bid pursuant to 11 U.S.C. § 363(k) based on the mortgage held by Griffon (the "Griffon Bid") as against the Property.  This offer is subject to any higher or better all cash offers tendered at the Sale.  The next acceptable bid must be all cash, and equal to or greater than $6,600,000.  Subsequent bids must be in increments equal to or greater than $25,000.00.  At the Sale, Griffon shall be entitled to increase the credit bid portion of the Griffon Bid up to the amount due on its note and mortgage which amount is estimated to be $11,826,049 as of May 12, 2011plus accrued interest and fees.

5. In order to be permitted to bid on the Property, prior to the commencement of the Sale, each prospective bidder (except Griffon or its nominee) must deliver to the Debtor a bank check in the amount of Nine Hundred Thousand Dollars ($900,000) (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as Attorneys for Lenox 126 Realty LLC, which amount shall serve as a good faith deposit against payment of the purchase price by such competing bidder once such bidder is determined to have made the highest or best bid for the Property (the "Successful Bidder"). In the event that an issue exists as to which of the various competing bids is higher or better, a hearing will be conducted before the Honorable Sean H. Lane, United States Bankruptcy Judge, at United States Bankruptcy Court, Alexander Hamilton Courthouse, One Bowling Green, New York, New York, upon the conclusion of the Sale. The Successful Bidder must execute, and thereby agree to be bound by (i) these Terms and Conditions of Sale, and (ii) a Memorandum of Sale. At the conclusion of the Sale, the Debtor's counsel will return the Qualifying Deposits to all other bidders.

6. The Successful Bidder, if not Griffon, must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to the Debtor, by bank check, or wire transfer at the closing of title to the Property (the "Closing"). The Successful Bidder must close title to the Property at a date that is no more than thirty (30) days after the Order by the Bankruptcy Court approving the Sale becomes final and non-appealable, TIME

BEING OF THE ESSENCE as to the purchaser, although such date may be extended solely by the Debtor. At the Closing, the Successful Bidder, if Griffon or its nominee pursuant to the Griffon Bid, shall pay cash consideration to the Debtor sufficient to cover the following claims under the Debtor's Chapter 11 plan: (i) such amount as may be necessary to satisfy any unpaid New York City real property tax, water and sewer charges and other New York City liens against the Property senior to the Griffon mortgage; (ii) such amount as may be necessary to pay priority claims under the Plan, (iii) $250,000 to be distributed to general unsecured creditors under the Debtor's Plan, and (iv) such amount as may be necessary to pay Chapter 11 administration claims and United States Trustee fees under the Plan; and the remainder of the purchase price may, at Griffon's discretion, be satisfied by credit bid or by authorizing Griffon's nominee to assume the Griffon mortgage on the Property.

7.  To the extent applicable, the Successful Bidder shall pay any real property transfer taxes incurred by the Transfer of the Property by the Debtor at the Closing. Purchaser acknowledges that it will be responsible for the completion of any ACRIS forms.

8.  Time is of the Essence as Against the Successful Bidder and the failure of the Successful Bidder to close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Debtor retaining the deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property under these Terms and Conditions of Sale. The Successful Bidder shall be obligated to close title

3

to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the Debtor's inability to deliver a quit claim deed to the Property. Further, the Successful Bidder shall have demonstrated, to the sole satisfaction of the Debtor or the Court, as the case may be, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. The Debtor reserves the right to reject any bid by an offeror who, in the reasonable discretion of the Debtor, the Debtor believes is not financially capable of consummating the purchase of the Property. Expenses incurred by the Successful Bidder, or any competing bidder concerning any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall the Debtor or the Debtor's professionals be responsible for, or pay, such expenses.

9. In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Debtor, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor deems appropriate. Should the Second Highest Bidder fail to close on the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from the Debtor to

the Second Highest Bidder, the Debtor shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice. All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in paragraphs 7, 7 and 8 hereof, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted.

10. The Debtor and the Debtor's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of

any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rule or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.  Each bidder shall be deemed to have agreed and acknowledged that no such representations have been made.  The Debtor is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Debtor or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Debtor.  The Property will be delivered subject to all valid, then existing tenancies at the time of the Closing, provided, however, that notwithstanding anything to the contrary in this paragraph, these terms of sale or the Debtor's Plan, the Property is being sold free and clear of any lease asserted by 321 Restaurant, LLC.

11. The Property is being sold free and clear of mortgages, judgment liens and any lease asserted by 321 Restaurant, LLC, with such mortgages and judgment liens to attach to the net proceeds of sale after deduction of any expenses of sale. Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) all occupancies, if any, that may exist or encumber the Property or any portion(s) thereof; and (f) environmental conditions. If the sale is to Griffon or its nominee then the sale shall be subject to the pre-existing mortgage held by Griffon. By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither the Debtor nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and

are not relying on any information provided by the Debtor or the Debtor's professionals.

12. All real estate taxes will be prorated as of midnight, the day prior to the Closing.

13. The Debtor shall convey the Property by delivery of a Quitclaim Deed. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure.

14. Neither the Debtor nor Debtor's counsel is liable or responsible for the payment of fees of any broker.

15. Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of Title 11 of the United States Code (the "Bankruptcy Code") or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be reasonably directed by the Debtor or by the Court. The Debtor reserves the right to reasonably modify these Terms and Conditions of Sale at the Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code the Debtor's Plan and/or prior orders of the Court.

16. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, all bidders will be deemed to have acknowledged having read these Terms and Conditions of Sale and have agreed to be bound by them.

17. If the Debtor is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to confirm the Debtor's Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, the Debtor's only obligation will be to refund the Deposit, together with any interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Debtor or the Debtor's professionals.

18. The Debtor reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason whatsoever, as the Debtor deems necessary or appropriate.

19. The Sale of the Property is subject to confirmation of the Debtor's Plan and approval by the Bankruptcy Court.

20. The Debtor or its attorney shall notify the Successful Bidder whether the Sale is approved and the Debtor's Plan confirmed. The Bankruptcy Court shall determine any disputes concerning the Sale of the Property. By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re                                                          Chapter 11

     Lenox 126 Realty LLC                           Case no.  11-12275

                   Debtor.

-------------------------------------------------------------x

NOTICE OF SALE

        PLEASE TAKE NOTICE, that upon the application of Lenox 126 Realty LLC ("Debtor"), a hearing ("Hearing") will be held on _____ at _____ __.m., or as soon thereafter as counsel can be heard, before the Honorable Sean H. Lane, at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004, to approve the sale of that certain property located at 321 Lenox Avenue, New York, New York, together with the personal property appurtenant thereto ("Property") to Griffon Heights LLC or its designee ("Griffon") for $6,500,000 representing cash and credit towards Griffon Heights LLC first mortgage lien against the Property, subject to higher and/or better offers.  The Property shall be sold "as is."  Except for Griffon, bidding shall be limited to all cash offers, and the minimum opening bid shall be $6,600,000.  All prospective bidders, except Griffon, shall be required to deposit $900,000 in escrow with the undersigned Debtor's counsel by bank check or wire deposit on or before _____, 2011 at 5:00 p.m.  The highest bidder at the Hearing shall be the purchaser (the "Purchaser") of the Property, free and clear of all commercial leases, liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the proceeds of sale.  Griffon shall have the right, but not the obligation, to assign it mortgage to the Purchaser. The Deposit shall be non-refundable in the event Purchaser fails to close on or before thirty days after the Hearing, and in the event the Purchaser fails to so close, the Deposit shall be remitted to Griffon, to be applied to Griffon's claim.  In the event the Purchaser closes on or before thirty days after the Hearing, the Deposit shall be applied to the purchase price.  Time shall be of the essence in the closing of this transaction.  In the event Purchaser fails to close as set forth herein, then the Debtor shall retain the right to accept the bid next highest in amount to the original Purchaser's bid.

        PLEASE TAKE FURTHER NOTICE, that a complete copy of the terms and conditions of sale is attached to the Debtor's Chapter 11 plan filed in the Bankruptcy Court and is available upon request of the undersigned.


Dated: Brooklyn, New York
_____, 2011

                                    Backenroth Frankel & Krinsky, LLP
                                    489 Fifth Avenue
                                    New York, New York  10017
                                    (212) 593-1100

# EXHIBIT B :

## ASSETS AND LIABILITIES

| Assets | |
|---|---|
| Real Property and misc. personal property | $9,000,000 |

| Liabilities | |
|---|---|
| New York City real estate tax, water, sewer and other liens senior to the First Mortgage. | $316,400 |
| Griffon Heights LLC Secured Portion of Claim | $8,683,600 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | $1,600 |
| General Unsecured Claims including mortgage deficiency claims. | $6,327,449 |
| **Total** | 15,329,049 |

## CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Real Property and misc. personal property | $9,000,000 |

| Liabilities | |
|---|---|
| Administration Claims | $950,000 |
| New York City real estate tax, water, sewer and other liens senior to the First Mortgage. | $316,400 |
| Griffon Heights LLC | $7,733600 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | |
| General Unsecured Claims | |
| **Total** | $9,000,000 |

Note: All claim amounts subject to objection.

2